WILLIAM LONG et al.

v.

GEORGE HESS et al.

*Filed at Ottawa January 15, 1895.*

1. APPEAL—*when cross-errors must be assigned.* An assignment of cross-errors is essential to the review, on an appeal by plaintiff, of the decision upon a motion by defendants to suppress a deposition.

2. HUSBAND AND WIFE—*when ante-nuptial contract does not affect future acquisitions.* A provision of an ante-nuptial contract that "as regards the worldly success and substance of the parties the bride agrees to receive the groom to live at her house," does not affect future acquisitions of the parties, especially those obtained after a change of domicil to a foreign country.

3. CONFLICT OF LAWS—*adoption of children of intended wife—effect on power of disposition by will.* An ante-nuptial contract made in a foreign country, by which the children of a former marriage of the wife are adopted by the husband, approved by the courts, is not applicable to real property acquired by the husband in Illinois after his emigration to this country, so as to prevent his disposition thereof by deed or will.*

4. INFANTS—*effect of infancy on child's change of domicil.* The fact that adopted children are infants at the time of the emigration of their parents, incapable of consenting to a change of domicil or of waiving rights, does not affect their status as to the real property acquired at the new domicil by the parent adopting them, the law of the new domicil being effective to control the distribution.

APPEAL from the Circuit Court of LaSalle county; the Hon. CHARLES BLANCHARD, Judge, presiding.

This was a bill in chancery, brought by William Long and Catherine Gleim, against George Hess, Henry Hess, Louis Hess and Mary Kopf, the children, Christina Hess, the widow, and Louis Hess, the executor, of Jacob Hess, deceased, to set aside the will of Jacob Hess, and to declare a trust in favor of the complainants in two-sixths of the estate of the testator. Jacob Hess died March 29, 1891, in LaSalle county, where he had lived for many

---

*The legal status of an adopted child, including the effect of adoption in another country, is the subject of a note to *Warren* v. *Prescott*, 17 L. R. A. 435.

years, leaving an estate consisting almost exclusively of lands situate in that county, and leaving a last will, by which he gave his entire estate to his widow for life, and after providing for the payment of $100 each to the complainants, divided the remainder among his four children above named.

Jacob Hess and Christina, his wife, were both natives of the Grand Duchy of Hesse, now a part of the German Empire. Prior to their marriage, in 1846, Christina Hess was the widow of Bernhardt Lang, then lately deceased, and the complainants are her children by her former marriage. She was then the owner of a small amount of property, consisting of a dwelling house and certain small tracts of land, but the amount and value of her property are not clearly shown by the evidence. Jacob Hess was at the same time the owner of a tract of land of the value of 350 florins, and of 150 florins in cash. Jacob Hess and Christina Lang being about to be married, the following ante-nuptial contract, as is claimed, was executed between them :

"*Know all men by these presents*, that, on the day hereinafter written, a true and irrevocable marriage contract has been agreed upon and concluded between Jakob Hess, single, lawful son of Adam Hess, citizen and baker of Beerfelden, deceased, as bridegroom, party of the first part, and Christina Lang, widow, of Beerfelden, as bride, party of the second part, as follows, to-wit: The said parties have resolved to take one another as husband and wife, to remain in joy and sorrow until death shall separate them, and to have their marriage solemnized in the near future by a priest. As regards their wordly success and subsistence, the bride agrees to receive the groom to live at her house. The groom brings into the marriage that piece of land situated at Unter Beerfelden (district of Hetzbach), described at page 86.144, N. 376.4, 1815 Klftr., and valued at 350 florins, also in cash 150 florins, (in words one hundred and fifty florins.) It is

further agreed that the two children of the bride, of her first marriage, shall have an advancement of 100 florins, (in words one hundred florins,) with the understanding that in case of the death of one of the said children the surviving child is to inherit the whole of the ·said advancement.   As to everything else the said two children of the first marriage and those to be begotten in this marriage shall inherit equally, share and share alike. In all other cases not especially enumerated herein the contracting parties subject themselves to the general laws of Germany, especially the rules and customs of the country.

"Beerfelden, May 11, 1846.

JAKOB HESS, *Groom,*

ANNA CHRISTINA LANG, *Bride,*

EVA CHRISTINA HESS, *Widow,*

ANDREAS SCHMAHL.

"Authenticated: NEWER, *Mayor.*"

It is further claimed, that for the purpose of obtaining a more full confirmation and validation of this contract it was presented to a local court having jurisdiction of matters concerning matrimonial contracts, the rights of children, matters of probate, etc., and that the following is a transcript of the record of the proceedings of that court in relation thereto:.

"BRF., *July 3, 1846.*

"Upon inspection of the files 1-5, and the production of the marriage certificate, it is, upon application of Jakob Hess, adjudged and decreed that the agreement of this date be made a part of the contract of marriage and agreement of the equal heirship of the children of the different marriages, and also that the certificate of the competent appellate court be hereto attached. (Published the same date.)

BRAUN, *Judge.*

"Done in the appellate court of Freienstein, Beerfelden, June 26, 1846."

"In the matter of the re-marriage of Christina, (*nee* Schmahl,) widow of Bernhardt Lang, of Beerfelden, Andreas Schmahl, blacksmith, and Oswald Lang, cloth manufacturer, appointed as guardians of the children of the first marriage, were duly obligated and bound, and being informed of the contents of the marriage contract and agreement as to the equal rights (heirships) of the children of the different marriages, they were duly examined, and declared as follows: Concerning the property affairs in question we will first make inquiry, and therefore request that another hearing be set, at which we will report. (Read and approved, and decreed that both guardians be summoned to appear on Friday, the third of next month, at 8 A. M. Published the same date.)

BRAUN."

"BEERFELDEN, *July 3, 1846.*

"At this hearing there appeared Andreas Schmahl, guardian, who declared that he was instrumental in making the said marriage contract and agreement as to the equal heirship of the children ; that in so doing he exerted himself to protect the interests of said wards therein ; that he considered the advancement of 100 florins as ample, and he therefore entered his consent to make said contract and agreement on behalf of his wards. (Read and approved.)

"There also appeared the said Oswald Lang, who stated that in his opinion the advancement of 100 florins was too low, and he insisted on an increase of the same; that in case the contracting parties would not consent to an increase, he would insist on a further investigation of their financial circumstances. (Read and approved.)

"The matter was thereupon taken under further advisement. Both guardians consulted with the other relatives of their wards, and with them appeared the groom, Jakob Hess, for himself and on behalf of his bride, and after all circumstances had been once more fully considered, the following settlement was agreed upon, to-wit:

"*First*—The groom, Jakob Hess, assumed the parentage of the two children.

"*Second*—The said children are to receive together an advancement of 200 florins,—that is, each child 100 florins.

"*Third*—The advancement is to be paid when the children are twenty-five years of age. In case one of the children should marry before that age, it may demand payment of its advancement at that time, and the money shall be paid at the marriage.

"*Fourth*—In case the son should become subject to conscription (military duty), and the father be not willing to ransom him and pay the ransom costs, the father, upon the demand of the son, shall be held to pay him the advancement at once.

"*Fifth*—In all other respects the stipulations of the contract of marriage and agreement as to the equal heirship of the children, dated May 11 of this year, shall remain in force.

"Read, approved and subscribed.

JAKOB HESS,
OSWALD LANG,
ANDREAS SCHMAHL.

"The court, being fully advised in the premises, entered the necessary order of alienation (transfer). Published the same date.

BRAUN.

"A correct copy.

SCHNELLBACHER,
*Clerk of the Grand-ducal Court at Beerfelden.*"

"The foregoing copy of marriage contract and court proceedings is hereby executed for Wilhelm Lang, of Hetzbach, on behalf of Wilhelm Lang, of Ottawa.

(Signature.)

"Beerfelden, May 21st, 1891, Grand-ducal District Court, Beerfelden."

Shortly after these proceedings Jacob Hess and Christina Lang were married, and as the fruit of such marriage

their four children, now defendants to this suit, were afterwards born. After their marriage Hess and wife lived in the house belonging to the wife, the complainants, then young children, being members of the family. There seems to have been a small bakery on the premises, and Hess, during the time he continued to live in Germany, carried on the business of a baker.

In May, 1851, Hess and wife sold the property they owned in Germany, the amount realized therefrom being a little over 1000 florins, or about $400, and they then came to this country, bringing the complainants with them. They first settled at Buffalo, New York, where Hess seems to have carried on the business of a baker in a small way. About the year 1858 he removed with his family to LaSalle county, in this State, where he resided up to the time of his death, and where he accumulated the estate which he attempted to dispose of by will. There is no evidence, nor does it seem to be claimed, that any portion of the avails of the property sold in Germany went into or formed a part of the estate which he owned at his death.

The complainants insist that the ante-nuptial contract above set forth is to be construed and enforced according to the rules of law in force in the Grand Duchy of Hesse at the time it was entered into; that by that law the complainants were adopted by Jacob Hess, and became heirs of his estate jointly with the children born of the marriage then about to be solemnized; that their right to succeed to the estate of Hess at his death was a vested right, and one which, under the law where the contract was made, was incapable of being divested by will, and therefore that the will is void as to them, or, at least, that the devisees should be held to have taken the lands devised to them subject to the complainants' rights, and that the devisees should be charged as trustees for their benefit.

The deposition of an attorney residing in Hesse, and learned in the laws in force in that Grand Duchy at that time, was taken on behalf of the complainants, and it is claimed that the local law in force there at that time was substantially as above stated. A motion to suppress his deposition upon the ground, among other things, that it was not taken in conformity with the statute, was made by the defendants and overruled by the court. The cause afterward coming on to be heard on pleadings and proofs, the court found the equities of the case to be with the defendants, and entered a decree dismissing the bill at the costs of the complainants. From that decree the complainants have now appealed to this court.

RICHOLSON & SEELEY, and BREWER & STRAWN, for appellants:

Foreign law is presumed to be common law, in the absence of rebutting evidence. *Chase* v. *Alliance Co.* 91 Mass. 311; *Bank* v. *Green*, 33 Iowa, 140 ; *Holmes* v. *Brougham*, 10 Wend. 75 ; *Star* v. *Peck*, 1 Hill, 270 ; *Throop* v. *Hatch*, 3 Abb. Pr. 23 ; *Cheney* v. *Arnold*, 15 N. Y. 354.

When the rights of children are in controversy, all the presumptions are in their favor. *Wallace* v. *Wallace*, 82 Ill. 530 ; *Gorin* v. *Gordon*, 38 Miss. 205.

Marriage contracts are highly favored, especially in protecting the rights of children. *Gale* v. *Gale*, 6 Ch. Div. 144; *Michael* v. *Morey*, 26 Md. 239 ; *Merritt* v. *Scott*, 6 Ga. 563; *Cole* v. *Society*, 64 N. H. 445.

Our courts enforce marriage contracts made abroad. *Mumford* v. *Canty*, 50 Ill. 370 ; *Dunlap* v. *Buckingham*, 16 id. 109 ; *Scheferling* v. *Huffman*, 4 Ohio St. 241; *Decouche* v. *Savetier*, 3 Johns. Ch. 190 ; *Crosby* v. *Berger*, 3 Edw. Ch. 538 ; *LePrince* v. *Guillemot*, 1 Rich. Eq. 187; *Lott* v. *Bertrand*, 26 Tex. 654; *Murphy* v. *Murphy*, 5 Martin, 83 ; *LeBreton* v. *Miles*, 8 Paige's Ch. 261.

One may make a valid contract to dispose of his property by will in a particular way, and a court of equity

will enforce the specific performance of such a contract. *Johnson* v. *Hubbell*, 10 N. J. Eq. 332; *Schutt* v. *Missionary Society*, 41 id. 115; *Roehl* v. *Haumesser*, 114 Ind. 311; *Sutton* v. *Hayden*, 62 Mo. 101; *Sharkey* v. *McDermott*, 91 id. 647; *Rivers* v. *Rivers' Exrs.* 3 Dessaus. 190; *Newton* v. *Newton*, 46 Minn. 33; *Carmichael* v. *Carmichael*, 72 Mich. 76; *Jones* v. *Martin*, 3 Anst. 882; *Fortes que* v. *Hennah*, 19 Ves. 66; *Barkworth* v. *Young*, 4 Drew, 1.

A minor cannot, of his own accord, change his domicil. Jacobs on Domicil, sec. 229; *Freeport* v. *Supervisors*, 41 Ill. 495.

A marriage contract is irrevocable as to issue. *Yeaton* v. *Yeaton*, 4 Ill. App. 579; *Wallace* v. *Wallace*, 82 Ill. 530; *Michael* v. *Morey*, 26 Md. 239; *Tabb* v. *Archer*, 3 H. & M. 397; *Gorin* v. *Gordon*, 38 Miss. 205; *Lott* v. *Bertrand*, 26 Tex. 654.

F. P. SNYDER, and W. H. STEAD, for appellees:

If it be admitted that the German law, contended for by the complainants, has been proven, yet such law will not be enforced in this State, under the facts in this case, to effectuate complainants' contention. *Lewis* v. *Headly*, 36 Ill. 436; *Roundtree* v. *Baker*, 52 id. 245; Story on Conflict of Laws, p. 132, sec. 143; pp. 159-160, secs. 183-186; *Saul* v. *Creditors*, 5 Martin, 569; *Castro* v. *Illies*, 22 Tex. 479; *Fuss* v. *Fuss*, 24 Wis. 263; *Besse* v. *Pellochoux*, 73 Ill. 289.

The law of the place where real property is situated governs exclusively as to the tenure, the title and descent of such property. 3 Am. & Eng. Ency. of Law, 564.

Any marriage contract executed in one country will not operate upon real estate situated in another. *Ordinaux* v. *Key*, 2 Sandf. Ch. 33; Story on Conflict of Laws, secs. 143, 159, 453; *Kelly* v. *Davis*, 28 La. Ann. 773.

Any title or interest in land can only be acquired or lost agreeably to the law of the place where the same is situated. *Wills* v. *Cooper*, 2 Ohio St. 124; *Goddard* v. *Sawyer*, 9 Allen, 78; *Cutter* v. *Davenport*, 1 Pick. 81; *Hosford* v. *Nichols*, 1 Paige's Ch. 240; 3 Am. & Eng. Ency. of Law, 565;

*Keegan* v. *Geraghty,* 101 Ill. 26 ; *Stoltz* v. *Doering,* 112 id. 234; *United States* v. *Crosby,* 7 Cranch, 115.

Even where there is a marriage contract entered into where community is the rule of property, and there is a change of domicil, personal property not included in the marriage settlement or subsequently acquired is governed by the law of actual domicil. Wharton on Conflict of Laws, sec. 199 ; Story on Conflict of Laws, sec. 185 ; *Ordinaux* v. *Key,* 2 Sandf. Ch. 45 ; *Russell* v. *Madden,* 95 Ill. 485.

This bill is an attempt to enforce a foreign law, and not for the enforcement of a contract, and will not be sustained by the courts of this State. *Besse* v. *Pellochoux,* 73 Ill. 285 ; *Castro* v. *Illies,* 22 Tex. 482 ; *Fuss* v. *Fuss,* 24 Wis. 256 ; *Kneeland* v. *Ensley,* Meigs, 620 ; *Gale* v. *Davis,* 2 Martin, 304; *Saul* v. *Creditors,* 5 id. 569 ; *Lyon* v. *Knott,* 26 Miss. 564.

H. N. RYON & SON, also for appellees.

BAILEY, J.: The defendants, in whose favor the decree was rendered, now urge, with a considerable degree of earnestness, that the court below erred in refusing to suppress the deposition taken in Germany, on the ground that the manner in which it was taken was a clear departure from that prescribed by the statute for taking the depositions of foreign witnesses. All we need say upon that point is, that the question thus raised is not before us for decision. The court below refused to suppress the deposition and considered it as evidence on the final hearing, but upon all the evidence as thus presented the decision of the court was in the defendants' favor and the complainants have appealed. The defendants have assigned no cross-errors, and they must therefore be deemed to be content with the decision of their motion to suppress, and so, for all the purposes of this appeal, the deposition, however irregularly it may have been taken, must be regarded as having been rightfully retained and considered as evidence at the hearing.

The only question presented by the record is as to the legal effect upon the property acquired by Jacob Hess in this State, of the ante-nuptial contract entered into in Germany between him and his then intended wife. It is claimed that the contract, when considered in connection with the judicial proceedings had thereon, constituted, in legal effect, an adoption of the complainants by Hess, so as to place them upon the same footing, so far as succession to his property and estate was concerned, with the children afterwards born of the marriage then in contemplation; and it is further contended, that by the rules of law in force where the contract was made, and which entered into and formed a part of it, the property then owned by Hess and by his intended wife, as well as that afterward acquired by them, became communal property, in which the children of the family, both natural and adopted, acquired a vested right, and that Hess could not, by will, divest their right to succeed to such estate as he might leave at his death.

After considering all the evidence, we are left in very grave doubt whether the laws of the Grand Duchy of Hesse, upon which reliance is placed, are sufficiently proved. But waiving that point, and assuming that the proof is sufficient, and that the rules of law prevailing in Hesse at the date of the contract were as the complainants contend, the question remains whether the ante-nuptial contract should be enforced in this State as to property, and especially real property, subsequently acquired by Hess in this State.

It should be remembered that at the date of the contract the parties were living at Beerfelden, in the Grand Duchy of Hesse, and, so far as appears, were intending to remain there permanently. There is nothing, either in the contract itself or in the evidence, having the least tendency to show that their removal to any other place was then contemplated. The evidence furnished by the contract is all in the direction of showing that their in-

tention was to make Beerfelden their permanent home. The agreement on the part of the bride was, "to receive the groom to live at her house," and the contract, after certain stipulations as to the property brought into the marriage by the groom, and as to the rights of the children of the bride by her former marriage, concludes with the provision, that "in all other cases not especially enumerated herein the contracting parties subject themselves to the general laws of Germany, especially the rules and customs of the country." In point of fact, Jacob Hess, after his marriage, took up his residence at his wife's house and made that his domicil, and thereupon engaged at that place in the business of a baker, which he carried on for five years. He then sold out his property there and emigrated to the United States.

It should also be observed that there is a total absence of any express provision in the contract making it applicable to the future acquisitions of the contracting parties. It deals with the property they then possessed, but makes no reference to such as they might afterwards gain. The only language in the contract on which any reliance is placed as having reference to future acquisitions is the following: "As regards their worldly success and subsistence, the bride agrees to receive the groom to live at her house." If these words are correctly translated from the original German, in which the contract was written, —and we have heard no suggestion that they are not,— they are, to say the least, extremely ambiguous, and we are able to put upon them no rational construction which would make out of them an agreement to subject the future acquisitions of the parties to the provisions of the contract. The most probable and natural interpretation of the words would seem to be, that, with a view to providing for the worldly success and the subsistence of the family, the bride agreed to receive the groom to live at her house. They can not, without importing into them a meaning which does not appear upon their face, be held

to have any direct reference to the future acquisitions of the contracting parties, and especially their acquisitions after emigrating from their then residence and making their permanent domicil in a foreign country.

The property rights of husband and wife, as affected by the marriage contract itself, or by an ante-nuptial agreement, where the marriage or the ante-nuptial agreement has been entered into in a foreign country, have always presented questions of no little perplexity and difficulty. Story, in his treatise on the Conflict of Laws, (sec. 143,) says: "The principal difficulty is not so much to ascertain what rule ought to govern in cases of express nuptial contract, at least where there is no change of domicil, as what rule ought to govern in cases where there is no such contract, or no contract which provides for the emergency. Where there is an express nuptial contract, that, if it speaks fully to the very point, will generally be admitted to govern all the property of the parties, not only in the matrimonial domicil, but in every other place, under the same limitations and restrictions as apply to other cases of contract. But where there is no express nuptial contract at all, or none speaking to the very point, the question, what rule ought to govern, is surrounded with more difficulty." The learned author then, after an extended examination of the opinions of the leading law writers in this country and in Europe, and also of the decisions of the Supreme Court of Louisiana, (the only court which, at that time, seems to have given these questions elaborate and careful consideration,) lays down the following propositions, which, as he says, although not universally established or recognized in America, have much domestic authority for their support and have none in opposition to them:

"(1) Where there is a marriage between parties in a foreign country, and an express contract respecting their rights and property, present and future, that, as a matter of contract, will be held equally valid everywhere, unless,

under the circumstances, it stands prohibited by the laws of the country where it is sought to be enforced. It will act directly on movable property everywhere. But as to immovable property in a foreign territory it will, at most, confer only a right of action, to be enforced according to the jurisprudence *rei sitœ.* (2) Where such an express contract applies, in terms or intent, only to present property, and there is a change of domicil, the law of the actual domicil will govern the rights of the parties as to all future acquisitions. (3) Where there is no express contract, the law of the matrimonial domicil will govern as to all the rights of the parties to their present property in that place and as to all personal property everywhere, upon the principle that movables have no situs, or, rather, that they accompany the person everywhere. As to immovable property the law *rei sitœ* will prevail. (4) Where there is no change of domicil, the same rule will apply to future acquisitions as to present property. (5) But where there is a change of domicil, the law of the actual domicil, and not the matrimonial domicil, will govern as to all future acquisitions of movable property, and as to all immovable property the law *rei sitœ.*" Story on Conflict of Laws, sec. 184, *et seq.*

The propositions thus laid down by Judge Story seem to have received the general approval of the courts of this country, so far as there has been occasion to consider them since he wrote. Thus, in *Fuss* v. *Fuss,* 24 Wis. 256, parties domiciled in Prussia were married there, and afterward entered into a post-nuptial contract, whereby each granted and transferred to the other all real and personal property which should belong to the donor on the day of his death. The wife, at the time, owned real estate in Prussia, over which, by the laws of that country, she had full control and right of disposal. Several years afterward the property was sold, the husband taking the money and investing it in land in Wisconsin, to which the parties removed, and on which they resided until the

husband's death. He also, during his lifetime, acquired other property, both real and personal, situate in Wisconsin, which he owned on the day of his death. By his last will the husband devised and bequeathed all his property, both real and personal, to his widow for life, with remainder to the brothers and sisters of the testator. On bill filed by the widow, claiming that, by force of the post-nuptial contract, she was entitled to an estate in fee in the lands and to the absolute ownership of the personal property left by her husband, it was held that there was nothing in the contract which spoke to the very point,—that it contained nothing which manifested any intention in the parties to regulate or control by it, according to the law of their matrimonial domicil, the future acquisitions and gains of property in any foreign State or territory or any property which should be held by the husband in such State or territory, and, consequently, that the property acquired and owned by the husband in Wisconsin in his own name was subject to be disposed of by him, by will or otherwise, according to the laws of that State, and that the widow's rights therein were not determined by the contract.

In *Castro* v. *Illies,* 22 Texas, 479, substantially the same doctrine was laid down, although, as that case arose out of a controversy between a wife claiming under an ante-nuptial contract and execution creditors of the husband, the decision is not in all respects so directly in point as the one last cited. There parties domiciled in Paris, France, executed an ante-nuptial contract and married in Paris. Some years afterward they emigrated to this country and became domiciled in Texas, where the husband subsequently acquired certain real property. It was claimed that by the rules of the French law the contract vested in the wife a certain interest in the property acquired by her husband which was not subject to seizure for her husband's debts, but it was held that as there were in the contract no words "speaking to the

very point,"—that is, no words making the contract specifically applicable to property subsequently acquired by the husband in a State or country foreign to that in which the contract was made,—it had no operation upon lands subsequently acquired by the husband in Texas.

In *Besse* v. *Pellochoux*, 73 Ill. 285, an ante-nuptial contract was made between parties domiciled in Switzerland in regard to property to be occupied during the marriage, it appearing that the contract contemplated no change of domicil, but was to be performed in the place where it was made, and it was held that the contract did not affect real estate acquired in this State by the husband after their emigration to this country. In the opinion the doctrine laid down by Judge Story was cited with approval, and it was said that in that case there was nothing in the contract "speaking to the very point,"— that manifested any intention that all future acquisitions of property in foreign countries should be controlled by it. See, also, *Lyon* v. *Knott*, 26 Miss. 548; *Kneeland* v. *Ensley*, Meigs, 620; *Saul* v. *Creditors*, 5 Martin, (N. S.) 569; *Le-Breton* v. *Myers*, 8 Paige, 261; *Gale* v. *Davis' Heirs*, 4 Martin, (O. S.) 645.

The case of *Decouche* v. *Savetier*, 3 Johns. Ch. 190, is one where an ante-nuptial contract, entered into by the parties in Paris, was enforced in this country in favor of the wife, to the exclusion of the husband's relatives. But there the contract expressly provided "that there shall be a community of property between them, according to the custom of Paris, which is to govern the disposition of the property, though the parties should hereafter settle in countries where the laws and usages are different or contrary." There the intention to make the contract applicable to property afterward acquired in foreign countries was expressly made to appear by "words speaking to the very point."

Considerable reliance is placed by the complainants upon the case of *Scheferling* v. *Huffman*, 4 Ohio St. 241,

where an ante-nuptial contract entered into by the parties in Germany, in which it was agreed that all the property of the intended wife which she then owned or which should be mutually acquired by the parties during coverture should be the property of the wife, was sustained and enforced, and held to apply to the property acquired by them in the State of Ohio after their emigration to this country. It will be noticed, however, that in that case the contract, by its express terms, was made applicable not only to the property then owned by the intended wife, but also to all property acquired during the continuance of the marriage. It is therefore clearly distinguishable from the present case, where no express provision is made applicable to property acquired in this State after the parties became domiciled here.

We are therefore of the opinion that the ante-nuptial contract in this case is not applicable to real property acquired by Hess in this State after his emigration to this country, but that such property was subject to disposition by him, by deed or will, according to the laws of this State. His will, therefore, must be held to be valid, so as to vest in his devisees a title which must prevail over any rights derived by the complainants from the ante-nuptial contract.

We are unable to see that any peculiar force is to be given to the fact that the complainants, at the time Jacob Hess and wife emigrated to this country, were infants, and therefore incapable of consenting to a change of their domicil, or of waiving any rights which were secured to them by the contract. As the contract can not be held to have any application to the property sought to be reached in this case, no rights of theirs were affected by their being brought to this country, and they had nothing to waive. Even if it be admitted that, by reason of their legal adoption by Jacob Hess, they would have been entitled to succeed to his estate, at

154—32

his death, as his heirs-at-law, the ante-nuptial contract furnished no obstacle to the exercise by Hess of his right to dispose of his estate by will, and he having done so, nothing was left to descend to the complainants as his heirs-at-law. Although the complainants may have acquired the status of adopted children and heirs-at-law by the contract and judicial proceedings had in Germany, their inheritance of after-acquired real estate situated in this State must be in accordance with our laws, and by our laws a testator has an absolute right to dispose of his property by will, even to the exclusion alike of his natural or his adopted children.

We are of the opinion that the decree of the circuit court is justified by the evidence, and it will accordingly be affirmed.

*Decree affirmed.*