BIRD S. COLER, as Commissioner of Public Welfare of the City of New York, Respondent, *v.* THE CORN EXCHANGE BANK, Appellant.

137

(Argued December 7, 1928; decided December 31, 1928.)

*Frank C. Laughlin, Henry M. Carpenter* and *Stewart W. Bowers* for appellant. Sections 921–925 of the Code of Criminal Procedure, upon which, concededly, the action of the plaintiff-respondent is based, are violative of section 6 of article I of the Constitution of the State

of New York and the Fourteenth Amendment to the Constitution of the United States in that said sections fail to provide notice of any kind whatever at any stage of proceedings thereunder, and, therefore, attempt to deprive persons of property without due process of law. (*People ex rel. Simpson* v. *Kempner*, 154 App. Div. 674; *Nerenberg* v. *Keith*, 167 N. Y. Supp. 612; *Martin* v. *Central Vermont R. R. Co.*, 50 Hun, 347; *Windsor* v. *McVeigh*, 93 U. S. 274; *Matter of City of Brooklyn*, 87 Hun, 54; *Twining* v. *New Jersey*, 211 U. S. 78; *Roller* v. *Holly*, 176 U. S. 398; *Matthews* v. *Matthews*, 240 N. Y. 28; *Matter of Wendell* v. *Lavin*, 246 N. Y. 115; *People ex rel. N. Y. C. & H. R. R. R. Co.* v. *Priest*, 206 N. Y. 277.)

*George P. Nicholson, Corporation Counsel* (*Joseph I. Berry, Martin H. Murphy* and *William E. Fay* of counsel), for respondent. Sections 921 to 925 of the Code of Criminal Procedure are constitutional. (*Biddles, Inc.*, v. *Enright*, 239 N. Y. 354; *People ex rel. Read* v. *Overseers of the Poor of the Town of Triangle*, 23 Barb. 236; *Ward* v. *Boyce*, 152 N. Y. 191; *Matthews* v. *Matthews*, 210 App. Div. 652; 240 N. Y. 28; *David* v. *David*, 125 Misc. Rep. 292.) Notice to defendants in proceedings under sections 921 to 925 of the Code of Criminal Procedure is provided for in section 74 of the Inferior Criminal Courts Act, as amended by chapter 339 of the Laws of 1919, in effect July 1, 1919, and in provisions of sections 232 to 235 of the Civil Practice Act. Apart from the notice so provided for, seizure of the fund, in itself, constitutes adequate notice to the husband in this action. (*People* v. *O' Neill*, 117 App. Div. 826; *People ex rel. Frank* v. *Keeper*, 38 Misc. Rep. 233.)

CARDOZO, Ch. J. Plaintiff, the Commissioner of Public Welfare, made complaint to the Domestic Relations Court that Raffaele DeStefano had abandoned his wife and infant child while residing with them in the city of New

York, and had absconded from the State leaving wife and child without means, and likely, unless relieved, to become charges on the public purse.

A warrant was signed and issued by two magistrates of the court, upon a supporting affidavit by the wife, authorizing the Commissioner of Public Welfare to take and seize all the right, title and interest of the absconding husband in a fund deposited to his credit with the defendand, the Corn Exchange Bank, and upon such seizure to make an inventory of the property taken and to make return of the proceedings with the warrant to the County Court for Bronx county.

Plaintiff has brought this action against the bank to reduce the fund to his possession with appropriate allegations that payment was refused after due demand and service. The defendant has moved for judgment upon the ground that the statute, the basis of the warrant, is a denial of "due process" under the Constitution of the State and Nation (N. Y. Constitution, art. I, § 6; U. S. Constitution, amendment XIV). Judgment for the defendant was reversed by the Appellate Term of the Supreme Court (*Coler* v. *Corn Exchange Bank*, 132 Misc. Rep. 449), and thereafter final judgment in favor of the plaintiff was rendered by the City Court. The appeal taken directly from that judgment is within the jurisdiction of this court, a constitutional question, and no other, being involved therein (*American Historical Society* v. *Glenn*, 248 N. Y. 445, 448).

The warrant of seizure was issued under Code Criminal Procedure, §§ 921, 922, 923, 924, 925. These sections provide in substance that the Commissioner of Public Welfare may apply to two magistrates for a warrant to seize the property of an absconding husband or father leaving wife or child likely to become charges on the public; that upon due proof of the facts, the warrant may be issued; that the officer receiving it may seize the property wherever found within his county, and shall be vested

with all the rights and title thereto which the person absconding then had; that return of all proceedings under the warrant shall be made to the next term of the County Court; that thereupon that court, upon inquiring into the circumstances of the case, may confirm or discharge the warrant and seizure; that in the event of confirmation the court shall from time to time direct what part of the property shall be sold, and how the proceeds shall be applied to the maintenance of spouse or children; and on the other hand that if the party against whom the warrant has issued shall return and support the spouse or children so abandoned, or give satisfactory security for such support, then the warrant shall be discharged, and the property restored.

The procedure thus authorized has its roots in a distant past.

In 1718 the Parliament of England enacted a statute which recites a like evil and prescribes a like remedy (5 Geo. I, ch. 8). The recital is that:

" Divers persons run or go away from their places of abode into other counties or places, and sometimes out of the kingdom, some men leaving their wives, a child or children, and some mothers run or go away, leaving a child or children, upon the charge of the parish or place where such child or children was or were born, or last legally settled, although such persons have some estates, which should ease the parish of their charge, in whole or in part."

Whereupon the enacting clause provides:

" That it shall and may be lawful for the churchwardens or overseers of the poor of such parish or place where any such wife, or child or children shall be so left, upon application to, and by warrant or order from any two justices of the peace, to take and seize so much of the goods and chattels, and receive so much of the annual rents and profits of the lands and tenements of such husband, father or mother, as such two justices of the

peace, as aforesaid, shall order and direct, for or towards the discharge of the parish or place where such wife, child or children are left, for the bringing up and providing for such wife, child or children; which warrant or order being confirmed at the next quarter sessions, it shall be lawful for the justices of such quarter sessions to make an order for the churchwardens or overseers for the poor of such parish or place, to dispose of such goods and chattels by sale, or otherwise, or so much of them, for the purposes aforesaid, as the court shall think fit, and to receive the rents and profits, or so much of them as shall be ordered by the sessions, as aforesaid, of his or her lands and tenements, for the purposes aforesaid." (See also 22 Halsbury, Laws of England, § 1209.)

The Statute of George I was enacted in substantially the same form on March 8, 1773, by the Colonial Legislature of New York. After the separation from England, the State Legislature placed a like act upon the statute books of the State, first in 1784 (Act of Apr. 17, 1784), and again in 1788 (L. 1788, ch. 62). From there, the act passed into the Revised Laws of 1813 (Act of Apr. 8, 1813; R. L. chap. 78, § 22), and thence in 1829 into the Revised Statutes (1 R. S. ch. 20, title 1, §§ 8 and 9), where the subject of the seizure was broadened to include things in action generally as well as rents and goods and chattels. The Code of Criminal Procedure has carried down the statute to our own day unchanged in point of substance. During all this long history there has been, so far as the published records show, no challenge of its binding force, though the enforcement of its remedies has been part of the routine of the criminal courts. Judges, as well as administrative officers, have taken its validity for granted (*People ex rel. Read* v. *Overseers of Poor*, 23 Barb. 236; *Downing* v. *Rugar*, 21 Wend. 178; *Goodman* v. *Alexander*, 165 N. Y. 289, 291).

Not lightly vacated is the verdict of quiescent years (*Ownbey* v. *Morgan*, 256 U. S. 94, 108, 109; *Otis Co.* v.

*Ludlow Mfg. Co.,* 201 U. S. 140, 154; *Biddles, Inc.* v. *Enright,* 239 N. Y. 354, 361).

" The Fourteenth Amendment, itself a historical product, did not destroy history for the States and substitute mechanical compartments of law all exactly alike. If a thing has been practiced for two hundred years by common consent, it will need a strong case for the Fourteenth Amendment to affect it " (*Jackman* v. *Rosenbaum Co.,* 260 U. S. 22, 31).

This background of tradition gives the setting of the statute and the method of approach when today its validity is challenged.

Much is made of the analogy between seizure under the statute and seizure under an attachment or other provisional remedy. We agree with the appellant that the analogy is only partial and imperfect. There, the property, though taken into the custody of the law, is held until an opportunity is given to a defendant, after suitable monition, to offer his defense (*Windsor* v. *McVeigh,* 93 U. S. 274, 279; *Coe* v. *Armour Fertilizer Works,* 237 U. S. 413, 425; *Grannis* v. *Ordean,* 234 U. S. 385, 393; *Pennington* v. *F. N. Bank,* 243 U. S. 269; *Security Sav. Bank* v. *California,* 263 U. S. 282, 287). Here the officer makes return of his proceedings to the County Court which inquires into the merits, and confirms or annuls the seizure without further warning of its action to the putative absconder (*People ex rel. Read* v. *Overseers of Poor, supra*). No doubt there are times, as under the Trading with the Enemy Act (40 Stat. 411, ch. 106; 40 Stat. 1020, ch. 201, § 7-c), when a conserving custody is permissible as the result of seizure without notice (*Miller* v. *Lautenburg,* 239 N. Y. 132; *Central Union Trust Co.* v. *Garvan,* 254 U. S. 554, 568; *Comm. Trust Co. of N. J.* v. *Miller,* 262 U. S. 51). A custodian is then in the position of a common-law receiver. The disposition of the property is postponed for a term prescribed by law, and thereafter rights and remedies are transferred to the proceeds as a substituted

fund. This statute does something more. It seizes and then distributes at the ensuing term of court.

We think the act is valid as a regulation of the family relation binding upon residents. A system of community property exists in many States (*Arnett* v. *Reade*, 220 U. S. 311). The Legislature of New York may say, if it will, that as an incident of marriage or parenthood a like system shall apply to any property of spouse or parent acquired in the future (*Seeber* v. *Randall*, 102 Fed. Rep. 215, 217; *Sandoval* v. *Priest*, 210 Fed. Rep. 814; *Nott* v. *Nott*, 111 La. Ann. 1028; *Kerr* v. *Urie*, 86 Md. 72; *Long* v. *Hess*, 154 Ill. 482; *Baker's Executors* v. *Kilgore*, 145 U. S. 487). By the statute in question, it has done something less, but something measurably akin. What is vaguely known as the police power, however indefinite its faculties, must have competence at least for this. The statute was in force long before the absconding husband made his deposit in the defendant bank, and long before his marriage. He knew, or must be assumed to have known, when he took up his abode within the State, that under the supervision of the law his property would be applied, without notice, to the discharge of his duty, the support of wife and child, if he left them destitute behind him. This was as much an incident to the family relation as dower or curtesy or any other marital right. A system of common ownership, a form of statutory assignment, was established for abandoned dependents to the extent of their necessities. Proof before the warrant with confirmatory proof thereafter, reduces to a minimum the risk of error or oppression. Whatever risk remains must be charged to the relation with its responsibilities and duties. The law does not stand upon punctilios if there is a starving wife at home. It " does not impose upon the States a duty to establish ideal systems for the administration of justice, with every modern improvement and with provision against every possible hardship that may befall " (*Ownbey* v. *Morgan*, *supra*). It keeps its

exactions within the bounds of long inherited traditions (cf. *Murray's Lessee* v. *Hoboken L. & I. Co.*, 18 How. [U. S.] 272, 278). The absconder counts the cost when he selects a domicile within the State. Submission is then an incident to parenthood and marriage.

In holding that the act is valid as a regulation by the Legislature of the family relation, we assume that the owner, the victim of the seizure, is in truth a husband or a parent, his matrimonial domicile here and not abroad. Jurisdiction is, of course, dependent upon the existence of the relation which the statute seeks to regulate. In the absence of that relation, the warrant and any proceedings under it may be disregarded as a nullity (*Thompson* v. *Whitman*, 18 Wall. [U. S.] 457). We do not read the statute as prescribing anything to the contrary. If it were open to a different reading, it would be void to that extent. The owner may come forward at any time and reclaim the fund from any one on the ground that in truth he was neither spouse nor parent, though charged as such in the petition. Neither the provisional warrant of the magistrates nor the confirmatory judgment later will then be evidence against him. Not improbably he may come forward at any time and contest the charge that he absconded, though admitting parenthood and marriage. We leave that question open. If he is within the jurisdiction, he will learn promptly of the seizure, and being present or nearby will presumably defend when defense there ought to be. If he chooses to leave the jurisdiction, the Legislature may say, in view of its control of the marital relation, that he must take the·chance of an appropriation of his property for the support of his dependents (cf. *Ownbey* v. *Morgan, supra,* at p. 111). This case does not require us to hold, however, that he will even then be bound unless in truth he has absconded. Here we have neither proof nor claim that the jurisdictional relation, however broadly interpreted, was lacking at the time of seizure. Raffaele DeStefano

is not here, denying that he is an absconding husband. The bank, claiming through and under him, is not here with a denial. It admits the jurisdictional relation, for the complaint, explicit in averment upon that head, is untraversed by an answer. No doubt, the bank's admission does not bind its depositor, but its plight in that regard is no worse than that of many a stakeholder harassed by conflicting claims and forced to choose between them (*Scheffer* v. *Erie Co. Sav. Bank*, 229 N. Y. 50, 53; *Newhall* v. *Longacre Bank*, 248 N. Y. 252, 254). The statute, if valid as to spouse or parent, is valid also as to another defending in his right. The bank has the same defenses that are open to its depositor, or so we shall assume, but surely it can have no greater ones. Confronted by the claim of a statutory assignee, it must ascertain the facts and wage the contest as it can (*Newhall* v. *Longacre Bank, supra*). If it fails to learn the truth, the chance of double payment is a common risk of life (*Scheffer* v. *Erie Co. Sav. Bank, supra*).

The case in brief is this: the statute, though it dispense with notice, is valid and effective as against an absconding spouse or parent. The victim of the seizure may nullify the whole proceeding, including any adjudication attempted in his absence, if there is lacking the jurisdictional relation which is the basis of his duty. He is then in the position of a non-resident who upon a false statement of his dwelling place has been subjected to a judgment after substituted service valid only as to residents (*Cont. N. Bank* v. *Thurber*, 74 Hun, 632; 143 N. Y. 648; *McDonald* v. *Mabee*, 243 U. S. 90; cf. *Miedreich* v. *Launeslein*, 232 U. S. 236), or in the position of a taxpayer whose chattels have been subjected to distress upon a false averment by a taxing officer that his taxes are unpaid (*Murray's Lessee* v. *Hoboken Land & Improvement Co., supra*), or in the position of an owner whose property has been seized under a wrongful exercise by a public officer of the power to abate a nuisance (*People*

*ex rel. Copcutt* v. *Board of Health,* 140 N. Y. 1; *Lawton* v. *Steele,* 152 U. S. 133; *Samuels* v. *McCurdy,* 267 U. S. 188, 200), or of one whose bank deposit has been paid to the holders of letters testamentary issued by a Surrogate's Court upon proof of his death, though in truth he was alive (*Scott* v. *McNeal,* 154 U. S. 34; cf. *Cunnius* v. *Reading School District,* 198 U. S. 458), or of one injured in person or property by an administrative order (*Public Clearing House* v. *Coyne,* 194 U. S. 497). In these and like instances, the order is a nullity if there is lacking the fact upon which jurisdiction is dependent, yet valid and decisive otherwise. DeStefano will be unaffected by any adjudication made at any stage of these proceedings if the jurisdictional relation, the postulate behind the seizure, is found to be unreal. On the other hand, if the relation exists, he is not aggrieved by the seizure, nor has due process been denied him (*Hatch* v. *Reardon,* 204 U. S. 152, 160, 161; *Hendrick* v. *State of Md.,* 235 U. S. 610). The bank, claiming under him, can gain no better right.

We have preferred to rest our judgment upon a ruling that, the jurisdictional relation being established or conceded, the property of an absconding spouse or parent may be applied without notice other than the seizure to the support of wife and child. We reach the same result, however, if we assume that notice is as necessary in such conditions as at the suit of any stranger. Seizure of the deposit at the instance of a public officer was warning to the owner that a proceeding had been begun (*Windsor* v. *McVeigh,* 93 U. S. 274, 279). If there was need of other warning to supply him with an opportunity for a hearing, it was given by the statute. The statute told him, a resident of the State, that the proceeding would come on for hearing at the next term of the County Court. This might be adequate notice or inadequate according to the circumstances (*Roller* v. *Holly,* 176 U. S. 398, 409; *Goodrich* v. *Ferris,* 214 U. S. 71).

Under the law, the terms of County Courts are publicly appointed (Judiciary Law, § 192; Cons. Laws, ch. 30). If the term next appointed gave a reasonable opportunity to the owner to appear and defend, he is not aggrieved though in other circumstances the time might be too short. The burden is on the defendant to show that notice was inadequate.

The judgment should be affirmed with costs.

POUND, CRANE, ANDREWS, LEHMAN, KELLOGG and O'BRIEN, JJ., concur.

Judgment affirmed.