[Civ. No. 16193.   First Dist., Div. Two.   May 25, 1955.]

CALIFORNIA MOTOR EXPRESS, LTD. (a Corporation), Respondent, v. STATE BOARD OF EQUALIZATION, Appellant.

Edmund G. Brown, Attorney General, James E. Sabine, Assistant Attorney General, Ernest P. Goodman and Eugene B. Jacobs, Deputy Attorneys General, for Appellant.

Norman A. Eisner, Haskell Titchell and Douglas Brookman for Respondent.

DRAPER, J. pro tem.*—This is an action in declaratory relief to determine whether the property of plaintiff express company is to be assessed by defendant State Board of Equalization under section 14 of article XIII of the Constitution of California. Defendant appeals from judgment for plaintiff.

The applicable portion of the constitutional provision is: "All property other than franchises, owned or used by . . . (3) companies doing express business on a railroad, steamboat, vessel, or stage line in this state . . . shall be assessed annually by the State Board of Equalization at the actual value of such property."

The trial court held that this provision has no application to Motor Express. Thus the properties of the company would be assessed by the assessors of each of the several political subdivisions in which it has property, rather than by the board on a uniform statewide basis. Neither levy nor collection of the tax is affected by the constitutional provision, which deals only with assessment.

Motor Express is an express corporation as defined in the Public Utilities Code. It arranges for transportation of goods at rates fixed by it, picks up the shipments from and delivers them to its freight terminals, but does not itself transport the goods between terminals. This transportation is performed wholly over truck lines which it does not own or

---

*Assigned by Chairman of Judicial Council.

operate. These lines are highway common carriers of property only. None carries passengers.

Motor Express does no business on any railroad, steamboat or vessel. Thus its property is assessable by the state board under the above provision only if the truck lines which carry goods for it are "stage lines." The company argues at length that a "stage line" operates vehicles carrying passengers, with only incidental carriage of baggage and express packages. Vehicles carrying goods only do not, says the company, constitute a stage line.

This argument is bolstered by historical discussion of the nomenclature of transportation in the days of horsedrawn vehicles, and by testimony of three transportation experts as to trade usage of the terms "stage" and "stage line" in California in and near 1910, when Wells Fargo and Company was the principal express company operating in this state. In our view, however, the meaning which the term had acquired by 1933 is determinative.

Section 14 of article XIII was added to our Constitution in 1910. It then provided for a gross receipts tax, payable to the state, upon many public service businesses, including "companies doing express business on any railroad, steamboat, vessel or stage line in this state."

The evidence is clear that all express companies were taxed under this provision. As automotive equipment came into use in the transportation business, all express companies, including those using automotive highway carriers, were so taxed. No distinction was made between carriers transporting passengers and those transporting property only. There was no protest by any express company so taxed. Motor Express itself was taxed under this provision in 1931, 1933 and 1934, and paid these taxes without protest.

In 1933 an amendment to this section was proposed by the Legislature and adopted by vote of the people. This amendment, which became effective in 1935, repealed the gross receipts tax, returned the physical properties of the affected companies to the tax rolls of the political subdivisions of the state, and provided for assessment of these properties by the State Board of Equalization.

The amendment, as had the 1910 enactment, applied to "companies doing express business on any railroad, steamboat, vessel, or stage line."

Reenactment of a provision which has a meaning well established by administrative construction is persuasive that

the intent was to continue the same construction previously recognized and applied. (*Coca-Cola Co.* v. *State Board of Equalization*, 25 Cal.2d 918, 922 [156 P.2d 1]; *Universal Eng. Co.* v. *State Board of Equalization*, 118 Cal.App.2d 36, 43 [256 P.2d 1059].)

Motor Express obviously recognized this principle. In every year since 1935, when the amendment adopted in 1933 became effective, it has been assessed by the board. It paid its taxes under these assessments without protest until 1951, when it made the protest which gave rise to this action.

The record is clear that all express companies have been similarly assessed continuously since 1935. This practice has been applied to express companies whose goods were transported by carriers of property only. In fact, the record shows that few, if any, of the express companies held subject to section 14 (both before and after its amendment) have moved their goods over lines carrying any passengers. Yet the unvarying administrative practice was to hold all express companies subject to the provision, and the unvarying practice of the industry was to accept these administrative rulings without protest.

■ ". . . (C)ontemporaneous and practical construction of a statute by those whose duty it is to carry it into effect, plus acquiescence by persons having an interest in the matter, is sufficient to justify the court in resolving any doubt as to the meaning of the language employed . . . in favor of such long unquestioned interpretation." (*Prichard* v. *Southern Pac. Co.*, 9 Cal.App.2d 704, 706 [51 P.2d 428]; see also *People* v. *Southern Pac. Co.*, 209 Cal. 578 [290 P. 25].)

■ Failure of any interested party to challenge the board's construction over many years is a factor entitled to much weight. "Not lightly vacated is the verdict of quiescent years." (Cardozo, J., in *Coler* v. *Corn Exchange Bank*, 250 N.Y. 136 [164 N.E. 882, 884, 65 A.L.R. 879].)

■ Of course, such guides are not conclusive, and a clearly erroneous administrative construction will not govern interpretation by the court. (*Whitcomb Hotel, Inc.* v. *California Emp. Com.*, 24 Cal.2d 753, 757 [151 P.2d 233, 155 A.L.R. 405].)

■ Here, however, the words involved are not sharply defined and immutably .certain in common usage. Certainly we cannot say that the Legislature and the voters of 1933 intended the phrase "stage line" as clearly excluding freight-carrying vehicles. Legislative use of the word "stage" has

itself indicated uncertainty. A 1927 amendment to the Public Utilities Act (now Pub. Util. Code, § 225) defines "passenger stage." Obviously this was to assure differentiation from those vehicles which carried property, and negatives a definition of "stage" which clearly limited that term to a vehicle carrying passengers.

The true purpose of the 1933 amendment was to return to local tax rolls the properties which, since 1910, had been subject to tax, upon a different basis, for state purposes only. To effectuate this transfer, and to assure against inequality, assessment was to be made by the state board. Such procedure might well result in higher assessments, in some political subdivisions, than would appraisal by local assessors. But that result is inherent in the concept of statewide assessment, and is consonant with the purpose of the 1933 amendment. (*Southern Calif. Tel. Co.* v. *County of Los Angeles,* 45 Cal.App.2d 111, 123-124 [113 P.2d 773].)

It may be that for the 16 years before its first protest, Motor Express properties were assessed lower than would have been the case under local assessments. The record shows that it desires to change now because it feels the assessments of the state board are, in some cities, higher than local assessments. This is not a sound reason for changing the long accepted construction of the constitutional provision.

Motor Express argues that this court is bound by the trial court's finding of fact that "A vehicle which is not designed for the carriage of passengers, but solely for the hauling of freight, is not a stage in the generally accepted and commonly understood meaning of the word." There is no question that this finding is supported by the testimony of three transportation industry experts called by Motor Express.

However, this finding and evidence "can only be regarded as one, among various sources of information, to which the court may resort for the purpose of ascertaining a fact of purely judicial cognizance. Whatever may have been the evidence in the superior court, and whatever effect it may have been allowed, this court must now decide, as matter of law, what the framers of the Constitution intended by the terms they have employed . . ." (*Sheehy* v. *Shinn,* 103 Cal. 325, 328 [37 P. 393].)

We conclude that there is no reason to give the term "stage line" the limited definition urged by Motor Express. This contention is supported, at most, by the terminology of

1910, when the original provision including the term was added to the Constitution. To adopt it would be to make of stale usage a strait-jacket confining our constitutional grants of power, and would be directly contrary to the view of the Constitution as a document expanding " 'to meet the advancing affairs of men.' " (*People* v. *Western Air Lines, Inc.*, 42 Cal.2d 621, 635 [268 P.2d 723].)

Respondent Motor Express is an express company subject to section 14 of article XIII of the Constitution.

The judgment is reversed.

Nourse, P. J., and Kaufman, J., concurred.

A petition for a rehearing was denied June 24, 1955, and respondent's petition for a hearing by the Supreme Court was denied July 20, 1955.