## Eckhart & Swan Milling Company v. William C. Schaefer, administrator, etc.

### Gen. No. 11,461.

1. NEGLIGENCE—*what does not constitute.* A claim of negligence upon which a recovery may be had cannot be predicated upon a peril with which the servant was familiar, and which, in the performance of his duties, he was obliged to incur.

Action on the case for death caused by alleged wrongful act. Appeal from the Superior Court of Cook County; the Hon. MARCUS KAVANAGH, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1903. Reversed. Opinion filed January 20, 1905.

**Statement by the Court.** This is an appeal from a judgment of the Superior Court of Cook county in an action on the case.

The original declaration contained five counts, in which the negligence charged is set up in substantially the same terms. Two additional counts were subsequently filed, in which additional duties were averred, which we will comment upon later. These additional counts, however, aver the same negligence which is charged in the original declaration as the proximate cause of the injury.

It appears from the evidence that Charles Grossman, appellee's intestate, was in the employ of the Eckhart & Swan Milling Company, appellant, as a laborer whose duties were to shovel grain, unload cars, push the cars on the tracks, sweep the floor, assist in putting up spouts for conducting grain to cars, oil the machinery and other similar work. He was forty years of age, and had worked for appellant for about a year and a half at the time of receiving the injury which caused his death. · The flour mill in which Grossman was working had a floor on the level of the ground. The ceiling of the first or ground story was about twelve feet high above the floor and consisted of the stringers and flooring of the second story. The second story contained a number of grain bins from which wheat was frequently taken and loaded into cars for transportation

elsewhere. The ground or main floor of the mill was about forty feet wide and ninety feet long. Railroad tracks entered from the north side near the east end, and cars were brought in on these tracks to be loaded. Wheat was taken from the bins in the second story through trap doors or slide doors in the bottom of the bins, and passed through spouts or stubs fixed to the ceiling under the slide doors, into movable wooden spouts about ten feet long which carried the grain to conveyors below. The conveyors were about three feet from the floor. The openings in the bottom of the bins were about a foot square, and the "stubs" extended down from the bottom of the bins about one foot. The upper ends of the movable wooden spouts were made to fit over the "stubs" and when in place the wooden spouts led, in a slanting direction, down to the conveyors upon which the lower ends rested. These movable spouts were held in place by a prop or brace called a "spear," which consisted of a piece of timber two by four inches, and about eight feet long, with two brads at each end. It weighed about ten pounds. The brads at the upper end stuck in the lower side of the spout, and the brads in the lower end stuck in the floor. The movable spout was a light portable device weighing twenty or twenty-five pounds, and could be taken from one bin and put up at another, as the work to be done might require.

It was a part of the duties of Grossman to put up these movable spouts, take them down and move them about from bin to bin. On March 2, 1898, he had helped to put in place the spout in question to take grain from one of the bins, a short time before the accident happened, and had pulled the slide in the trap door allowing the wheat to pass from the bin above through the spout into the conveyor. As the wheat passed through, it was noticed that some of it leaked out at the connection between the "stub" and the spout. Hewitt, who was superintendent for appellant, called Grossman's attention to the leak and said to him "Charley, we will have to fix the corner of that spout, to make it fit up closer upon the 'stub' so that the grain

will not spill out." Grossman went about twelve or fifteen feet away and secured a saw and a step-ladder. He placed the step-ladder on the floor in such a position that when he mounted the step-ladder he was directly south of the "stub" on which the upper end of the spout was fastened, and between it and a revolving shaft which carried power to the elevators. The shaft was between four and five feet from the "stub" horizontally, and about two feet below it. Hewitt saw deceased start to go up the step-ladder with the saw in his hand. At that moment Hewitt heard some cars coming in on the track and stepped over to the north to prevent the railroad men from backing the cars far enough to strike the car he was loading. He had moved about thirty or thirty-five feet away and had called to the railroad men when he heard a noise from the direction where he had left Grossman. Hewitt went back and saw that Grossman had fallen to the floor and was apparently unconscious; that the step-ladder was in position where Grossman had placed it; that the spout and spear had fallen down in an opposite direction from where Grossman was at work. Hewitt then stopped the wheat from running out of the bin by pushing the slide, gave a signal to stop the machinery and called some men to assist in carrying Grossman to the engine room. Grossman had sawed into the spout about three quarters of an inch. No one saw the accident.

O. W. DYNES, for appellant.

JOHN R. GEARY, for appellee.

MR. JUSTICE SMITH delivered the opinion of the court.

In the view we take of this case it is unnecessary for us to consider the many assignments of error based upon the action of the trial court in giving and refusing instructions, at the close of the trial. The question whether or not, under the pleadings and the evidence, the plaintiff is entitled to recover, is fundamental, and if decided in the negative disposes of the case.

In the first count of the original declaration the plaintiff avers that the wooden spout was held in place only by a wooden prop about ten feet long, placed upright, the lower end resting on the main floor of the elevator; that the spout in consequence of the negligent, insecure and improper manner in which it was placed in position by said defendant, was apt to fall on being handled. It then sets out the instruction of defendant's superintendent to saw off the upper end of the spout and that Grossman procured a step-ladder and commenced sawing off the end of the spout with all due care and caution, and the spout, owing to the negligent and insecure manner in which it was fastened in position by defendant, suddenly, and without any warning to the said Charles Grossman, deceased, gave way and fell down, striking the said Charles Grossman, deceased, and thereby precipitating him against a certain revolving shafting in said elevator; that he was caught in said shafting and revolved around in said shafting, thereby receiving injuries from which he died. The second count, after stating the employment of Grossman and the manner of doing business in defendant's mill, avers that it became the duty of defendant to use due care and diligence in and about the proper fastening of the said wooden spout securely in position; and plaintiff avers that in this the defendant made default and carelessly and negligently placed said spout in position, so that it was apt to fall when being handled; that while deceased was at work in sawing off the upper end of said spout under the direction of defendant, and while deceased was in the exercise of all due care and caution, the spout by reason of its being negligently and insecurely placed in position, gave way and suddenly and without any warning to said Grossman fell down, striking the said Grossman and thereby precipitating him against a certain revolving shafting in said elevator, and deceased, being so hurled against said shafting, was thereby caught in said shafting and was revolved around in said shafting, thereby receiving injuries from which he died in a few hours.

The third count, after stating the preliminary matter

Eckhart & Swan Milling Co. v. Schaefer.

proceeds as follows :   And plaintiff alleges that the wooden spout, in consequence of the negligent, insecure and improper manner in which it was placed in position by said defendant, was apt to fall on being handled; that at a distance of about two feet from the upper end of said spout, at said time, was a certain revolving shafting, a portion of the machinery used in said elevator; that defendant negligently and improperly ordered Grossman to·saw off the upper end of said spout so improperly and insecurely placed in position by defendant; that the work of sawing off the end of said spout was beyond and outside of the scope of the employment of Grossman, and was extra hazardous; that the dangerous character of said work at the time and place aforesaid was known to said defendant, and was not known to said Grossman; that, acting in accordance with said order and exercising all due care and caution, Grossman obtained a step-ladder, and mounting same, attempted to saw off the end of said spout, when, by reason of the improper and insecure fastening of said spout, and by reason of the negligent and improper order so given, as aforesaid, by said defendant, said spout then and there gave way suddenly, and, without any warning to Grossman, fell down, striking Grossman, and thereby then and there precipitating him against the said revolving shafting.   And Grossman was caught in said shafting and revolved around in said shafting, thereby then and there receiving injuries from which he died a few hours thereafter.

In the fourth count, plaintiff alleges that the spout so placed in position by defendant was held in place only by a wooden prop about ten feet long placed upright, the lower end resting on the main floor of said elevator, which said wooden prop or spear was wholly insufficient to securely and properly hold said spout in position, and the spout, in consequence of the negligent, insecure and improper manner in which it was placed in position as aforesaid by said defendant, was apt to fall on being handled; that the improper and insecure fastening of said spout was known to defendant, and was not known to Grossman; that it then

and there became the duty of the defendant to warn Grossman of the improper and insecure fastening or placing in position of said spout, and in this plaintiff avers that the defendant therein made default, and the spout by reason of its insecure fastening gave way and fell against Grossman and he was hurled against said shafting and was caught by it and revolved around in said shafting, and thereby he received injuries.

The fifth count, after stating the situation and the manner of doing business at appellant's mill, alleges that by reason of the premises the defendant owed to Grossman the duty of using ordinary care toward furnishing and maintaining proper appliances by which said spouts so used in conveying grain from said grain bins could be properly fastened or held in position, so that they would not fall down as the result of a person handling them; but the plaintiff alleges that the defendant prior to and at the time and place aforesaid, not regarding its duty, wrongfully, negligently and improperly failed, and neglected to furnish and maintain appliances by which said spout could be properly fastened and held in place as aforesaid, but therein made default, and negligently, carelessly and improperly permitted said spout so used as aforesaid to be and remain so improperly and insecurely fastened that it was likely to fall if a person caught hold of it for any purpose; and while Grossman, under the directions of defendant, was in the act of sawing off the upper end of said spout, so improperly and insecurely fastened as aforesaid, and while Grossman was in the exercise of all due and ordinary care and caution for his own safety, the spout then and there, as a result of the improper and insecure condition in which it was fastened, gave way suddenly and without any warning to Grossman, fell down, striking Grossman and thereby precipitating him against a certain revolving shafting in said elevator; and that Grossman, being then and there hurled against said shafting, was then and there caught in said shafting and revolved around in said shafting, thereby then and there receiving injuries from which he died a few hours thereafter.

In the first additional count it is averred that by reason of the close proximity of the revolving shafting to the upper end of the spout, the work of sawing off the end of the spout was dangerous and full of peril to Grossman, and it was entirely practicable for the defendant to have attached to the machinery a clutch or other appliance by means of which the shafting at that point could be cut off from the operation of the machinery or power, thus rendering the work that Grossman was doing reasonably safe; but there was no clutch, and the defendant negligently and carelessly allowed the shafting to revolve rapidly without any clutch; and then makes the same averments as in the original counts as to the manner in which the accident happened.

The second additional count alleges that it was the duty of the defendant to have the motion of the revolving shaft stopped while Grossman was engaged in sawing off the end of the spout, but that defendant negligently omitted to stop the motion of the shaft. It then states that the accident was caused in the same manner as in the other counts.

A careful examination of the declaration discloses that the particular negligence set out in each count, which is alleged to have caused the injuries complained of, was carelessness and negligence in placing the spout in position and insecurely fastening it so that it would fall when being handled; and that by reason thereof and as a result of its improper and insecure condition it gave way when Grossman was sawing it, and fell against him and hurled or precipitated him against the revolving shaft.

There is no material controversy in the evidence. No living person saw the accident. As to what was done after Hewitt saw deceased ascending the ladder with a saw in his hand, is purely a matter of conjecture and inference from known facts. When Hewitt returned to the place where Grossman was working, the deceased was lying on the floor with most of his clothing stripped off his body. The step-ladder was still standing where Grossman had placed it. The spout and brace had fallen down in an op-

posite direction from the position Grossman was in when at
work.   The spout and brace had been fastened in the usual
way a short time previous to the accident, deceased assist-
ing in putting them up.   The spout had been sawed into
about three-quarters of an inch.

From these facts no reasonable deductions can be made,
in our opinion, tending to support the theory of the dec-
laration that the spout and brace fell against the deceased
and knocked him against the shafting.   First, these articles
had fallen in the opposite direction.   Second, the step-ladder
was standing where Grossman had placed it. ˙ If the spout
and spear had fallen against Grossman with sufficient force
to throw him against the shafting, the step-ladder on which
he was standing would have been thrown over with them.
Third, the combined weight of the spout and brace was
thirty-five or forty pounds.   Grossman was on the step-
ladder with his head near to and perhaps above the upper
end of the spout.   If the spout, by reason of being inse-
curely fastened, fell over against him, only the top of it
could have struck him, and the force must have been so
slight that it is exceedingly improbable it could have
knocked him off the ladder, for the reason that the top of
the spout could not have traveled more than a foot or two
while the base was stationary, and consequently it could
have had but little momentum when it struck deceased.
The conclusion must be, in our opinion, that in any reason-
able view of the evidence, the negligence charged as the
immediate cause of the accident did not produce the in-
juries in the manner set forth in the declaration.

Appellee states in his brief that the third count was the
main count relied upon by plaintiff.   This count avers that
the defendant, by its superintendent, negligently and im-
properly ordered Grossman to saw off the end of the spout,
and that that work was outside of the scope of the employ-
ment of Grossman, and was extra hazardous, its dangerous
character being known to the defendant, and unknown to
Grossman.   The evidence in this case does not show that
the particular work of making the spout "fit up closer upon

the stub," so that the grain would not spill out, was extra hazardous.    As to whether there was any hazard about it, depended entirely upon the manner of doing it, and as to that, deceased received no special directions.    The only peril appears to have been in getting too close to the revolving shaft.    This, Grossman was entirely familiar with.    It was a part of his duties to oil the bearings of the shaft when it was running.    He must, therefore, have known that it was running rapidly, and that it was dangerous to allow his clothing to come in contact with it when it was running.    Nor does the evidence tend to prove that adjusting the spout to the stub was outside of and beyond his employment.    It tends rather to show that it was within the scope of his employment, for that was a part of his regular duties.    The mere fact that he had to use a saw to cut off one corner of this particular spout in order to adjust it more perfectly to the stub that was being used at the time, does not tend to prove that he was ordered to do anything outside of his employment.    So that if the averments of the declaration connected this work with the injury as cause and effect, the evidence, in our opinion, would fail to sustain the averments, and show actionable negligence. But, as we have seen, this count of the declaration avers the alleged negligence, which produced the injury, to be the insecure and improper fastening of the spout to the stub, in the following words:    "By reason of the improper and insecure fastening of said spout, and by reason of the negligent and improper order so given as aforesaid by said defendant, said spout then and there gave way suddenly, and, without any warning to said Charles Grossman, deceased, fell down, striking the said Charles Grossman, deceased, and thereby, then and there precipitating him against said revolving shafting."    Thus, when the pleader comes to the final and substantive averment of the negligence which caused the injuries, the matters we are now discussing are eliminated, and we think properly, for the law is that they do not constitute actionable negligence.

The case of the American Malting Co. v. Lelivelt, 101

Ill. App. 320, was entirely similar to the case before us in its facts, except that the revolving shaft in that case had projecting set-screws which were invisible when the shaft was in motion, while in the case at bar the shaft was smooth. The principles of law applied there control this case. In that case this court said: "It was apparent to any one of mature years and ordinary capacity, that the revolving shaft was dangerous, whether it was equipped with projecting set-screws or not. The evidence does not clearly establish, and it is a matter of inference only, that it was the set-screw which caught the clothing of appellee, intestate, and caused his injury. Close approach to the shaft while it was revolving was perilous and it was not incumbent upon appellant to notify or warn appellee of this self-evident fact. Anderberg v. C. & N. W. Ry., 98 Ill. App. 207, and cases there cited.

"Cases cited by the learned counsel for appellee which hold that a defect which increases the peril of the employment ought to be called to the attention of the employee if known, or of such as ought to be known, to the employee, are not in point, for here there was no defect, but an appliance which was in common use and of the ordinary kind."

And further on the court say in that case: "The danger in a swiftly revolving shaft is obvious. Whether the engineer directed appellee to use a crow-bar in his work, or not, it is uncontroverted that appellee was not directed to do the work with a screw-driver. He did choose to do it in that manner and he knew the hazard. Karr Co. v. Kroenig, 167 Ill. 560."

The deceased was a man forty years of age, and the evidence tends to show that he was of average intelligence as to the conditions surrounding him in appellant's mill. Everything connected with the spout and the shafting was open and obvious—there was no concealed danger. He had at the time of the injury been familiar with the machinery and appliances for a year and a half, and that he knew the hazard of coming in contact with the revolving shafting is in our opinion an irresistible inference, and that

no other inference could be drawn from the undisputed facts in evidence. In Werk v. Illinois Steel Co., 154 Ill. 432, our Supreme Court say: "While questions of negligence or of contributory negligence are ordinarily questions of fact, to be passed upon by a jury, yet, when the undisputed evidence is so conclusive that the court would be compelled to set aside a verdict in opposition to it, the court may withdraw the case from the consideration of the jury and direct a verdict."

In our opinion no case was presented warranting a recovery of damages against appellant, and a verdict for the defendant should have been directed by the court. Pitrowsky v. Reedy Elevator Mfg. Co., 54 Ill. App. 253, and cases there cited; Herdman-Harrison Milling Co. v. Spehr, 145 Ill. 329.

The judgment is therefore reversed.

*Reversed.*