### Frank Marshall v. Grant M. Ford Administrator.

#### Gen. No. 12,148.

1. BILL OF EXCEPTIONS—*when sufficiently purports to contain all the evidence.* Notwithstanding the bill of exceptions does not specifically recite that it contains all the evidence, yet such fact sufficiently appears where from the entire bill of exceptions and its various recitals it is apparent that it does contain all such evidence.

2. MASTER—*when not liable for injury to servant.* Where a servant being fully apprised of the risks and dangers of a situation, voluntarily takes such risk and incurs such danger, and is injured in consequence, his master is not liable.

Action on the case for personal injuries. Error to the Superior Court of Cook County;' the Hon. ROBERT W. WRIGHT, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1905. Reversed, with finding of fact. Opinion filed January 30, 1906.

**Statement by the Court.** This is an action brought to recover for personal injuries resulting in the death of one John O'Neil.

There is no dispute in reference to what we deem the controlling facts. Plaintiff in error was operating a grain elevator at which the deceased, who was a carpenter, had been employed from time to time prior to the accident. At the time of the accident the deceased had been working there about three days. He was engaged with another carpenter in repairing what is called an "elevator leg" and leveling the shaft connected therewith. There was a "conveyor box" running north and south about eight or ten feet west of the main "leg" parallel with and about two feet from the west wall of the building. The length of this conveyor box does not clearly appear from the evidence, but it was about eighteen inches square and stood on blocking which raised it about three inches from the floor. Its top was therefore about eighteen inches wide and about twenty-one inches above the floor. Running north and south parallel with the western edge of the conveyor box and about three and a half feet above it, or according to the only witness who saw the accident, about the height of the lower part of his shoulder-blades when standing on the conveyor box, ran a revolving shaft. This appears to have been at least five or six feet or more above the floor. One witness testifies that the shaft was eight feet six inches above the floor and about six feet long. On this shaft was a coupling or "sleeve" shoved over each of two ends to join parts of the shaft together. Running through the sleeve set screws were inserted at each end. These screws were forced down as tightly as possible on to the shaft to hold the ends thus joined firmly in position. The screws had a nut or head and projected somewhat above the sleeve or coupling. There is conflict in the evidence as to the extent of this projection.

Some of the defendant's witnesses state that they projected from an inch and a half to two and three-quarters inches, and there is testimony in behalf of plaintiff in error that the projection was only five-eighths of an inch. The elevator building was destroyed by fire some time after the accident.

There is no conflict in the evidence relating to the manner in which the accident occurred. While the deceased and his partner were working at the "elevator leg," the machinery was shut down. They had substantially finished the work before going to lunch the day of the accident. When they returned the deceased suggested that they "see now whether the shaft is level." He then went down stairs and told the foreman to start up the engine. The machinery began to move "very slow." The deceased came back, got on top of the conveyor box and called to his partner, the only witness to the accident, to get up there with him and watch the belt to see if the shaft upon which they had been working was level. They concluded it was working properly. Getting down from the conveyor box, they proceeded to complete their work, putting some doors into the "elevator leg." The deceased then got up on the conveyor box again and discovering a couple of small holes in the elevator leg or box, called his partner up beside him and pointed them out, suggesting to his fellow workman that he nail boards over them. The latter stepped down to do this, and as he did so "heard a bump." Looking around he discovered that the deceased was caught on the shaft and "was going around the shaft with a lantern in his hand." Before the machinery could be stopped the injuries complained of were inflicted from which O'Neil subsequently died. When he was released from the shaft it was discovered that his clothing had been caught by one of the set screws projecting from the coupling.

M. L. THACKABERRY, for plaintiff in error.

R. A. BURTON and A. F. REICHMANN, for defendant in error.

Marshall v. Ford.

MR. JUSTICE FREEMAN delivered the opinion of the court.

It is said in behalf of the defendant in error that the writ of error must be dismissed and the judgment affirmed because the trial judge did not seal the bill of exceptions and because it is not made to appear in the record that it contains all the evidence offered or introduced at the trial. Why the first of these objections should be made we are at a loss to understand, in view of the fact that the bill of exceptions is both signed and sealed by the trial judge. As to the second objection, we are of opinion that while the customary statement that the bill of exceptions contains all the evidence seems to have been carelessly and unwisely omitted, the fact that the bill of exceptions does contain all the evidence is otherwise sufficiently manifested. It states that "the plaintiff to maintain the issues on his part introduced the following evidence, to-wit:" and at the conclusion of the plaintiff's evidence appears the statement, "Whereupon the plaintiff rested." It is shown that at the conclusion of the defendant's evidence plaintiff's attorney remarked: "I think that is all if the court please," and that defendant's attorney then said, "That is our case." Subsequently plaintiff in error called another witness, at the conclusion of whose testimony appears a statement by the court referring to the evidence preserved, "That is all." The closing arguments followed. It is apparent that the bill of exceptions purports to contain all the evidence. What is said in Mullin v. Johnson, 98 Ill. App., 621–622–3, and cases there cited, is in point and disposes of defendant's objection.

It is urged in behalf of defendant in error that the evidence in the record sustains the verdict and judgment. The averments in the counts of the declaration upon which the claim to recovery is based, are to the effect that the defendant carelessly, negligently and improperly allowed a certain set screw to project, uncovered and unprotected, an unnecessary distance from the machinery to which it was attached, and while the deceased in the exercise of due care was in performance of his duties he "was caught upon said

set screw and dragged upwards and crushed against the ceiling whereby he received" the injuries complained of. The contention is that the projecting screw was not a reasonably safe construction, of which the deceased had no notice or warning. The undisputed evidence is that the deceased was not at work upon or about the shaft upon which he was injured. His work was entirely upon the "elevator leg," removed some six or eight feet from the conveyor box upon which he was standing when caught and from the shaft which injured him. While he and his partner were working on the "elevator leg" the machinery had not been in operation. It was the deceased himself who when the work was about done caused the machinery to be started up, apparently that he might see whether the shaft connected with the "elevator leg" upon which he had been working would run true. After he had, by getting up on the conveyor box for better observation, ascertained that it did, he had gotten down again on the floor and he and his partner proceeded to put finishing touches upon their work. This completed, the deceased without stopping the machinery, again got upon the "conveyor box," not this time to observe the operation of the part of the machinery upon which they had been working, but apparently to see whether the work on the "elevator leg" was all properly finished, an observation which did not require in any way that the machinery should be continued in operation. He discovered two small holes in the "leg" or box, over which he directed boards to be nailed. In making this observation he brought himself for the second time in close proximity to the revolving shaft, which he had, as we have said, himself set in motion. Had he remained on the floor he could not have been caught by the screw on the shaft, for it would have been above his head. He could not have come in dangerous proximity to it while at the work he was engaged to do, nor in moving about on the floor. It was only when he got on the conveyor, above the western edge of which the shaft was revolving, that he was in danger from it. Having set the machinery in motion himself, due care for his own safety required him to

Marshall   v.   Ford.

keep out of its way.   His employer gave him no orders requiring him to put himself in such a place of danger with the machinery in operation.   He could have avoided all risk if he wished to stand on the conveyor, by simply causing the machinery to be stopped in the same manner he had caused it to be started.   The position and movement of the shaft were obvious.   There was plenty of light by which to do his work and see the two small holes six or eight feet or more away.  ˙ The shaft was revolving just below his shoulders as he stood on the box.   While he had a lantern in his hand, it was not for use in the room, but was one he had been using to light up the inside of the "elevator leg" upon which he and his partner had been working.   With full knowledge of the situation he took the risk and brought himself in close proximity to the shaft and coupling.˷ As said in Am. Malting Co. v. Lelivelt, 101 Ill. App., 320: "It was apparent to any one of mature years and ordinary capacity that the revolving shaft was dangerous, whether it was equipped with projecting set screws or not.   *   *   * Close approach to the shaft while it was revolving was perilous and it was not incumbent upon appellant to notify or warn appellee of this self-evident fact.   Anderberg v. C. & N. W. Ry. Co., 98 Ill. App., 207." In the Lelivelt case the injury complained of was inflicted in very much the same way as in the case at bar.   Lelivelt was standing upon a "conveyor" when he was caught by a set screw upon a revolving shaft, as was the. deceased.  ˙In that case, as in this, "the only grounds upon which negligence of appellant could be predicated are that the use of projecting screws is of itself a negligent act, or that there was negligence in failing to warn the appellee that projecting set screws were upon the shafting in question."   Am. Malting Co. v. Lelivelt, *supra,* page 324.   What is there further said as to such alleged negligence is applicable here and need not be repeated. See also Eckhart v. Schaefer, 118 Ill. App., 21, and cases there cited.   In the case at bar it is to be noted the shaft and projecting screws were too high to endanger any one moving about on the floor in their vicinity.   Special effort

was required to get up high enough to be in dangerous proximity to it. The master had nothing to do with putting the deceased in the position of obvious danger where he had placed himself when injured. As said in Karr Supply Co. v. Kroenig, 167 Ill., 560–563: "It is a long established rule of law, founded in natural justice, that 'the mere relation of master and servant can never imply an obligation on the part of the master to take more care of a servant than he may reasonably be expected to take of himself.'"

It is obvious that the undisputed facts do not justify the verdict and judgment. The deceased was the victim of his own negligence. The consequences of the accident are deplorable, but there can be no doubt that the judgment of the Superior Court will have to be reversed with a finding of facts.

*Reversed.*